UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TORRI MONTAGUE DURDEN,

    Petitioner,

v.

MATT MACAULEY,

    Respondent.
_____/

Case No. 1:23-cv-13282

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING PETITIONER'S MOTION FOR BOND; DENYING A CERTIFICATE OF APPEALABILITY; AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

In 2019, Petitioner Torri Durden was convicted in state court of first-degree criminal sexual conduct and assault by strangulation. In December 2023, Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus and raised four claims for federal habeas relief. As explained below, three lack merit, and the fourth is unexhausted and waived. Accordingly, Petitioner's habeas petition and his ancillary motion for bond pending these habeas proceedings will be denied. Because reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief, this Court will decline to issue a certificate of appealability. And because an appeal would not be taken in good faith, this Court will deny Petitioner leave to appeal *in forma pauperis*.

**I.**

In 2019, a jury convicted Petitioner Torri Durden of first-degree criminal sexual conduct ("CS-1"), MICH. COMP. LAWS § 750.520(b)(1) and assault by strangulation, MICH. COMP. LAWS § 750.84(1)(b). The following facts recited by the Michigan Court of Appeals are presumed correct on habeas review. *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> Durden was convicted of sexually assaulting AW at Durden's apartment on June 23, 2019. Durden met AW on a dating application, they texted for a few weeks, and Durden invited AW to his apartment. AW agreed to meet Durden at his apartment before she went to work on the morning of June 23. AW alleged that while sitting on Durden's bed, Durden began to kiss her, but she told him to stop. Durden asked her "what was the point of coming over if [she] wasn't trying to" have sex with him. AW responded that "just because [she] came over, that didn't mean that [she] wanted to . . . have sex with him." Durden then began to strangle her. AW screamed, and Durden told her to shut up. AW told Durden that she had asthma and couldn't breathe, and he briefly allowed her to get up to use her inhaler. According to AW, Durden then began to again choke her, forcibly held her down, and anally penetrated her without her consent. Before AW left, Durden took a photograph of AW's identification and told her, "If you don't f**k with me, I won't f**k with you."
>
> After leaving Durden's apartment, AW immediately called her boss and told her boss what happened. AW drove to work, and when she arrived, a coworker took her to the hospital. The hospital could not give AW a proper sexual assault examination, so AW was referred to HAVEN, an organization that offers services for victims of sexual assault. There, AW received a forensic medical examination by a sexual assault nurse examiner (SANE), Katrina Ferris, who observed injuries to AW's anal region consistent with AW's account of the assault. Ferris did not observe any injuries to AW's neck area, but testified that AW complained of other symptoms consistent with strangulation. DNA collected during the examination was consistent with Durden being a contributor. AW attended a follow-up medical examination approximately three weeks later, at which AW disclosed continued symptoms consistent with strangulation.
>
> The prosecution also presented the testimony of KM, who testified that she met Durden on Facebook in 2008, and eventually invited him to her house. According to KM, Durden tried to initiate sexual activity and she told him to stop, but Durden sexually assaulted her. Durden also told KM that he knew where she lived if she told anyone. Durden was later convicted of second-degree criminal sexual conduct in that matter.

*People v. Durden*, No. 353012, 2022 WL 3009754, at *1 (Mich. Ct. App. July 28, 2022).

In February 2020, the Circuit Court in Oakland County, Michigan (the "trial court") sentenced Petitioner as a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 18 to 50 years for the CS-1 conviction, and nine to 50 years for the assault conviction. *Id.* at *1; *see also* ECF No. 10-12 at PageID.718. In February 2021, the trial court denied Petitioner's motion for a new trial. ECF No. 10-12 at PageID.691–701. The Michigan

Court of Appeals affirmed Petitioner's conviction on direct appeal in July 2022, *see generally Durden*, 2022 WL 3009754, and the Michigan Supreme Court denied Petitioner leave to further appeal in January 2023. *People v. Durden*, 984 N.W.2d 189 (Mich. 2023). On December 27, 2023, Petitioner filed a Petition in this Court seeking a writ of habeas corpus. ECF No. 1.

**II.**

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal court may not "issue [a habeas] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit

- 3 -

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, to obtain habeas relief in federal court, a state prisoner must show the state court's rejection of his or her claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III.

Petitioner raises the following four grounds for federal habeas relief:

I. The "[t]rial court erred in admitting over defense objection photographs from [AW's] follow up exam where the prosecution witness could not properly authenticate the photographs and the photographer did not testify, ECF No. 1 at PageID.5;

II. The "[t]rial court erred by not allowing defense witnesses to testify and for defense counsel's failure to argue the admissibility of their testimony; counsel was ineffective," *Id.* at PageID.7;

III. The "[p]rosecutor knowingly used perjured testimony to obtain her conviction," *Id.* at PageID.8; and

IV. "The trial court erred by not including jury instructions pertaining to [a] lesser included offense[.]" *Id.* at PageID.10.

Each ground will be addressed in turn.

### A.

Petitioner's first habeas claim is twofold. First, Petitioner argues that the trial court erred in admitting photographs of AW's injuries taken by a nurse during a follow-up medical examination. ECF No. 1 at PageID.5. Second, Petitioner argues that, because the nurse who took these photos did not testify at trial, the trial court deprived him of his Sixth Amendment right to confront those testifying against him. *Id.* The first argument is noncognizable, and the second lacks merit.

At Petitioner's trial, the prosecution admitted photographs of AW's injuries, including pictures of AW's eye, which showed increased pressure in her head consistent with strangulation. *Durden*, 2022 WL 3009754, at *2. Sexual Assault Nurse Examiner Katrina Ferris testified that another nurse took these photos during one of AW's "follow-up" examinations. *Id.* Although the nurse who took the photos did not testify at trial, the trial court concluded the photos were nevertheless admissible and authenticated under Michigan Rule of Evidence 902(11), which provides that records of regularly conducted activity may be authenticated through the custodian's written declaration, instead of live testimony. *Id.* at *2–3; *see also* MICH. R. EVID. 902(11).

To the extent Petitioner claims the trial court improperly admitted the photos contrary to Michigan Rule of Evidence 902(11),[1] his argument is not cognizable on federal habeas review. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, federal habeas review is limited to deciding whether a state court conviction violates federal law. *Id.* Accordingly, errors in applying state law—including state rules of evidence—are normally not cognizable federal

---

[1] Notably, the Michigan Court of Appeals squarely rejected this claim, concluding the photos were admissible and sufficiently authenticated because, in accordance with Rule 902(11):

> Before trial, the prosecution filed a notice of its intent to introduce AW's certified medical records, which included these photographs, under MRE 902(11). The records were produced during discovery and were available to Durden before trial. Durden did not object to the prosecution's notice under MRE 902(11), and did not otherwise argue, either below or on appeal, that the proffered certified medical records did not satisfy the requirements of MRE 902(11) or MRE 803(6). In any event, the prosecution introduced, and the trial court admitted into evidence, the certificate from the custodian of the medical records. The certificate affirmed that the medical records, including the photographs, complied with the requirements of MRE 902(11). Accordingly, the trial court did not abuse its discretion by ruling that the medical records, including the photographs from AW's follow-up examination, were admissible without further authentication.

*Durden*, 2022 WL 3009754, at *3.

habeas claims. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000) (noting some state court evidentiary rulings may violate federal due process if they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996))). Petitioner's claim is not cognizable because he has not identified any decision "even remotely suggesting that the state court's authenticity ruling violated his constitutional right to due process." *James v. Miniard*, No. 21-1547, 2021 WL 8697838, at *2 (6th Cir. Dec. 7, 2021) (holding petitioner "failed to state a cognizable" habeas claim "to the extent that he argued that the state court erred . . . in concluding that [a] birth certificate was admissible as a self-authenticating . . . document").

Relatedly, Petitioner argues the trial court violated his Sixth Amendment "right to confrontation" because he could not cross-examine the nurse who took the admitted photos of AW's eyes. ECF No. 1 at PageID.5. But the Michigan Court of Appeals expressly rejected this claim, holding that photographs are not testimonial evidence for purposes of the Sixth Amendment Confrontation Clause. *Durden*, 2022 WL 3009754, at *4. This decision is not contrary to or an unreasonable application of federal law.

The Sixth Amendment provides that criminal defendants "shall enjoy the right to . . . confront[] . . . the witnesses against him." U.S. CONST. amend. VI. This "Confrontation Clause" prevents the prosecution from introducing testimonial, out-of-court statements against the defendant unless the declarant is sufficiently "unavailable," or the defendant had a prior opportunity to confront the evidence through cross-examination. *Crawford v. Washington,* 541 U.S. 36 (2004). But the Confrontation Clause is only implicated by the admission of *testimonial statements*. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008).

Here, the challenged photographs "are not statements at all, let alone testimonial ones." *United States v. Clotaire*, 963 F.3d 1288, 1295 (11th Cir. 2020) ("We understand intuitively that pictures are not witnesses; pictures 'can convey incriminating information . . . [b]ut one can't cross-examine a picture.'" (quoting *United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014))). Numerous federal courts agree. *See, e.g.*, *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014) ("The photographs . . . were not 'witnesses' against [the defendant and thus] did not 'bear testimony' by affirming anything with a 'purpose.'"). *Wallace,* 753 F.3d at 675 (7th Cir. 2014); *United States v. Lopez-Moreno*, 420 F.3d 420, 436 (5th Cir. 2005) ("While the Supreme Court chose . . . not to define precisely what is and is not a testimonial statement, it is clear that the photocopy of the identification card does not qualify as such because it in no way involves a witness bearing testimony."). Indeed, the Federal Rules of Evidence define a "statement" as one's "oral," or "written" assertions, or nonverbal conduct intended as an assertion. FED. R. EVID. 801(a). Even if the photographs could plausibly be characterized as "statements," they are not testimonial. In *United States v. Cromer*, the Sixth Circuit set forward what has become the prevailing test in the circuit for determining testimoniality: "[t]he proper inquiry . . . is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." 389 F.3d 662, 675 (6th Cir. 2004). Here, Petitioner does not even attempt to argue—and the record in no way supports— that "RN Hammond" took the follow-up photos of AW primarily to prosecute Petitioner. *See* ECF No. 1 at PageID.5. To the contrary, Sexual Assault Nurse Examiner Ferris testified at trial the "purpose of the photographs" was to "verify" AW's injuries, and assess whether they were or were not related to sexual assault for treatment purposes. *See* ECF No. 10-8 at PageID.409, 426–48.

In sum, Petitioner's argument that the trial court erred in concluding that the photographs were sufficiently authenticated under state evidentiary rules is not cognizable, and Petitioner's argument that the admission of these photographs violated his Sixth Amendment rights lacks merit.

**B**.

Petitioner's next habeas claim concerns the trial court's decision to preclude Petitioner from calling three women as witnesses, all of whom would have testified that they met Petitioner online and then had consensual sex with him. *Durden*, 2022 WL 3009754, at *5. Petitioner seeks federal habeas relief because, in his view, (1) this preclusion violated his constitutional "right to a defense," and (2) his trial counsel was constitutionally ineffective for failing to argue that this testimony was admissible character evidence. ECF No. 1 at PageID.7. The Michigan Court of Appeals already rejected both arguments and, as explained below, neither rejection was contrary to federal law.

**1.**

First, the Michigan Court of Appeals rejected Petitioner's argument that he was denied the right to present a defense when the trial court precluded his proposed character witnesses. The Michigan Court of Appeals concluded that the proposed testimony was irrelevant under Michigan Rule of Evidence 402, such that the testimony was not probative of any pertinent character trait under Michigan Rule of Evidence 404. *Durden*, 2022 WL 3009754, at *5. Unlike victim AW, the three proposed witnesses *agreed* to have sex with Petitioner. Accordingly, the Michigan Court of Appeals reasoned, their testimony about Petitioner's character "to engage in sexual relations with other consenting women" was not probative of any pertinent character trait—namely, "how [Petitioner] would react *when consent for sex was refused.*" *Id.* (emphasis in original):

> The fact that [Petitioner] did not become forceful or violent with other women who consented to sexual activity with him did not have any tendency to make it more or

>   less probable whether he would act the same way when confronted with a woman who refused to consent to sex. Because the proffered evidence was not probative of [Petitioner]'s character in this latter context, the evidence was not relevant under MRE 401. Accordingly, the trial court did not abuse its discretion by excluding this evidence.

*Id.* Building off this, the Michigan Court of Appeals concluded Petitioner's right to a defense was not violated because such right "is not absolute" and "is not infringed" by a court's application of evidentiary rules. *Id.* at \*6 ("Thus, 'the right to present a defense extends only to relevant and admissible evidence.'" (quoting *People v Solloway*, 891 N.W.2d 255, 271 (2016)). This conclusion accords with federal law.

A criminal defendant's right to a defense is a fundamental element of due process. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("[W]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" (internal citations omitted)). But this right is not absolute, and courts do not violate this right by precluding defense evidence that is privileged or otherwise inadmissible under the federal rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). A federal court will not grant habeas relief on a claim involving a state court's exclusion of evidence on the ground of relevancy "unless the relevance and probative value of such evidence is so apparent and great that excluding the evidence denies the petitioner the due process of law." *Midgyett v. Jackson*, 542 F. Supp. 3d 665, 671 (E.D. Mich. 2021) (quoting *Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003)). "The inquiry in reviewing a claim of improper exclusion of evidence is whether the evidence was rationally connected to the crime charged and, if its exclusion was so prejudicial as to deprive the defendant of a fundamentally fair trial." *Id.*

Moreover, under the standard of review for habeas cases as enunciated in 28 U.S.C. § 2254(d)(1), it is not enough for a petitioner to show that the state trial court's decision to exclude potentially helpful defense evidence was erroneous or incorrect. Instead, a habeas petitioner must show that the trial court's decision was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003). Petitioner has made no such showing here. *See generally* ECF No. 1. At bottom, the trial court reasonably concluded that testimony that Petitioner had consensual sex with three different women on three prior occasions was irrelevant to whether he sexually assaulted or strangled AW. Precluding this evidence from trial did not deprive Defendant of his constitutional right to an adequate defense, so Petitioner is not entitled to federal habeas relief.

**2.**

Petitioner next argues that his trial counsel was constitutionally ineffective because he only argued that the three women's' testimony was admissible to refute the prosecution's evidence that Petitioner had a pattern of misbehaving with women he met online. *See* ECF No. 1 at PageID.7. In Petitioner's view, his trial counsel should have additionally argued the women's testimony was admissible evidence of Petitioner's positive character. *Id.* The Michigan Court of Appeals rejected this claim:

> As already explained, however, the proposed testimony simply was not admissible due to its lack of relevance, even if offered for a character purpose. Thus, [Petitioner] cannot show that there is a reasonable probability that the trial court would have decided this issue differently if counsel had emphasized the character purpose of the evidence. Indeed, [Petitioner] argued this purpose in his motion for a new trial, and the trial court still determined, properly, that the evidence was not admissible. Therefore, [Petitioner's] ineffective-assistance claim also fails

*Durden*, 2022 WL 3009754, at *6. This reasoning does not contravene federal law.

In *Strickland v. Washington*, the Supreme Court promulgated the preeminent "performance and prejudice" test for whether a counsel's representation is constitutionally sufficient. A criminal defendant—or habeas petitioner—asserting ineffective assistance must show (1) that counsel's performance was objectively deficient, and (2) that the defendant was prejudiced as a result. *Strickland v Washington*, 466 U.S. 668, 687 (1984).

Here, since the Michigan Court of Appeals already considered and rejected Defendant's ineffective assistance of counsel claims, Petitioner must show that decision was contrary to, or unreasonably applied the *Strickland* standard. And this showing is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). The *Strickland* standard is "all the more difficult" for a habeas petitioner to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Neither prong of the *Strickland* standard is satisfied here. Counsel cannot be constitutionally ineffective for failing to raise a frivolous or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). And even if Petitioner's trial counsel erred by not raising the character evidence argument at trial, Petitioner was not prejudiced because he raised the argument in his motion for a new trial, ECF No. 10-12 at PageID.672–75, which was squarely rejected by the trial court. *Id.* at PageID.696–700. Petitioner is accordingly not entitled to habeas relief on this ineffective-assistance-of-counsel claim.

## C.

Petitioner next claims that the prosecutor "knowingly used" perjured testimony from AW because she testified that she had bruises on her neck from Petitioner's strangling, but Nurse Ferris separately testified that AW had no visible injuries on her neck during the medical examination. ECF No. 1 at PageID.8. But the Michigan Court of Appeals already rejected this argument:

> [M]erely because testimony conflicts with another witness's testimony does not compel the conclusion that the prosecutor knowingly used perjured testimony. *See People v Bass*, 893 N.W.2d 140 (2016) ("Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false.").
>
> Ferris's testimony that there were no visible injuries to AW's neck at the time of the initial medical examination does not establish that AW's testimony about bruises on her neck was false because AW's testimony was not restricted to the date of this examination. AW also did not specify when the bruising on her neck first developed. In any event, this alleged inconsistency was presented to the jury, thereby enabling it to assess AW's credibility. Accordingly, because [Petitioner] has not established that the prosecutor knowingly introduced, or failed to correct, perjured testimony, there was no due-process violation.

*Durden*, 2022 WL 3009754, at *15. The Michigan Court of Appeals' conclusion was not contrary to, or an unreasonable application of, federal law.

Consistent with "rudimentary demands of justice" and notions of federal due process, prosecutors cannot deliberately deceive the court or jurors by presenting known false evidence, and must correct the court if known false evidence is admitted. *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a claim that a prosecutor knowingly used false or perjured testimony to secure a conviction in violation of federal due process, a criminal defendant must show "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989)). However,

a habeas petitioner must show that the statement was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner's perjury claim fails at the first step because he has not shown that AW's statement about the bruises on her neck was false, let alone "indisputably" so. Petitioner argues only that the testimony was undermined by the contradicting testimony of Nurse Ferris that AW had no bruises on her neck *at the time of AW's medical exam*. ECF No. 1 at PageID.8. But these two testimonies are not inconsistent, and even if they were, it is well-established that "mere inconsistencies in testimony," without more, "do not establish" falsity. *Coe*, 161 F.3d at 343 (citing *Lochmondy*, 890 F.2d at 822). More importantly, even assuming AW falsely testified that she had, at some unspecified time, bruises on her neck, Petitioner has not even attempted to show that the prosecutor *knew* about this falsity. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009). Petitioner is accordingly unentitled to federal habeas relief on this ground.

**D**.

Fourth and finally, Petitioner claims that the trial court erred by failing to instruct the jury on the lesser-included offense of third-degree sexual conduct, MICH. COMP. LAWS § 250.2(d). *See* ECF No. 1 at PageID.10. This claim will be rejected as unexhausted and, alternatively, waived.

Petitioner's jury instruction claim is unexhausted. A Michigan petitioner must present each ground to both the Michigan Court of Appeals and the Michigan Supreme Court before it becomes ripe for federal habeas review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002). Because Petitioner failed to raise this claim before the Michigan Supreme Court, ECF Nos. 10-13 at PageID.956–64; 11 at PageID.1036, the claim is unexhausted. *See e.g.*, *Rupert v. Berghuis*, 619 F. Supp. 2d 363, 367 (W.D. Mich. 2008).

But even if Petitioner exhausted his jury instruction claim, it would be rejected as waived. *See Burton v. Bock,* 239 F. Supp. 2d 686, 691 (E.D. Mich. 2002) (noting "unexhausted claims may still be rejected if they lack merit in any event"). Although Petitioner did not present this argument to the Michigan Supreme Court, he presented it to the Michigan Court of Appeals, which swiftly rejected it as waived:

> [Petitioner] did not request . . . a . . . lesser-offense instruction at trial. Moreover, before closing arguments, the trial court discussed its proposed jury instructions with the parties. . . . [D]efense counsel failed to object. Then, after the trial court instructed the jury, it asked the attorneys if there were "any changes or corrections to the instructions as read" and defense counsel replied, "No, your Honor." Because defense counsel affirmatively approved of the instructions as given, any claim of instructional error is waived. *See People v Kowalski*, N.W.2d 200, 212 (Mich. 2011) ("[B]y expressly . . . approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review.").

*Durden*, 2022 WL 2009754, at * 8. The Michigan Court of Appeals properly applied federal law.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733–34); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("Waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors."). "When one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal." *Morgan v. Lafler*, 452 F. App'x 637, 646, n. 3 (6th Cir. 2011) (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)).

Petitioner nor his counsel sought a lesser-included offense instruction, and neither objected to the trial court's instructions as read, despite ample opportunities to do so. *See, e.g.*, ECF No. 10-

- 14 -

7 at PageID.278. Petitioner thus waived his right to challenge the trial court's jury instructions as erroneous and is unentitled to federal habeas relief on this final claim. *See Schweizer v. Horton*, No. 19-13414, 2023 WL 2578249, at *3 (E.D. Mich. Mar. 20, 2023) (rejecting habeas claim of erroneous jury instruction because petitioner's trial counsel "expressly approved the jury instructions, waiving" any right to appellate review).

For these reasons, Petitioner's Petition for a Wirt of Habeas Corpus, ECF No. 1, will be dismissed.

## IV.

On July 12, 2024, Petitioner separately filed a motion seeking his release on bond pending a final decision on his habeas petition. ECF No. 13. To receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts and exceptional circumstances justifying special treatment in the interest of justice. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993) (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990). Such relief is rare. *Dotson*, 900 F.2d at 79.  Here, as explained, Petitioner failed to establish that he would prevail on the merits of his habeas claims, so he is not entitled to conditional release on bail or bond. *See, e.g., Greenup v. Snyder,* 57 F. App'x 620, 621-22 (6th Cir. 2003). Thus, his motion seeking this relief will be denied.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**VI**.

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that Petitioner's Motion for Bond, ECF No. 13, is **DENIED.**

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes the above-captioned case.**

Dated: February 5, 2025                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge